No. 21383.

EARL EUGENE FITZPATRICK *v.* THE PEOPLE
OF THE STATE OF COLORADO.
(412 P.2d 893)

Decided April 4, 1966.     Rehearing denied April 25, 1966.

John F. McGrath, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John E. Bush, Assistant, George H. Sibley, Special Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

The plaintiff in error will be referred to as the defendant. An information was filed in the district court of Pueblo county in which he was accused in separate counts of statutory rape and taking indecent liberties with the fourteen year old niece of his wife. Upon trial to a jury he was found guilty of statutory rape as charged in the first count of the information. The second count, indecent liberties, was dismissed. Judgment entered on the verdict and the defendant is here on writ of error seeking reversal of that judgment.

The evidence introduced upon the trial abundantly supported the verdict of the jury. As grounds for reversal of the judgment it is argued that there was not sufficient proof that the crime was committed in Pueblo county; and that the trial court should have instructed the jury that if there was a reasonable doubt as to whether it took place in Pueblo county the verdict should be "not guilty." It is also argued that the trial court erred in permitting the victim and one, John Aragon, to testify concerning a statement made by the

defendant's wife which was directed to the defendant while the offense was being committed by him.

A very brief reference to the facts as shown by the evidence offered by the people will show the setting out of which these arguments arise. As already indicated, the victim of the rape was a fourteen-year-old girl, the niece of defendant's wife. The defendant was forty-two years old, the father of two small children who were asleep in the back "wagon" portion of the station wagon in which the offense took place. Other persons in the car were the defendant's wife, who was about eight months pregnant, and John Aragon, a sixteen-year-old nephew of the wife. At the defendant's request the wife had asked her sister, mother of the victim, to permit the girl to live temporarily at their home to help her during her pregnancy and she accordingly came to live with them on June 2, 1963. In the early evening of June 14, the party set out for Florence from Rocky Ford via Pueblo where John Aragon lived, he being the son of another sister of the defendant's wife. The testimony of Aragon was that, prior to leaving, the defendant had been drinking and that, because of his reckless driving (which the defendant testified was due to an injured hand), he asked to drive when they reached Fowler. There the defendant requested his wife to buy a bottle of wine, which she did. Thereupon the defendant moved into the back seat with the girl and Aragon took over the driving. He drove thereafter to Pueblo. The town of Fowler is two or three miles from the county line between Otero and Pueblo counties. At Pueblo, Aragon stopped near his home and, at the defendant's request to "get lost," hastily left the car and went to a neighbor's house to telephone the police. The defendant then took over the driving and while the car was moving slowly the girl abandoned the car in hysterical condition and ran to the home of Mr. Chance, not far from her aunt's house. He telephoned the police and the girl and he went to the police

station and from there to the Parkview Hospital where she was examined by Dr. Wexler.

The alleged indecent liberties began shortly after leaving Fowler and after a period of struggle; the rape began after crossing the county line into Pueblo county and continued until entering the city of Pueblo. It was accomplished by force and by twisting the girl's arm and after prolonged resistance by her and remonstrances by her aunt and cousin Aragon. Following the girl's departure from the station wagon, the defendant proceeded toward Florence, stopping on a side road for a nap of two to three hours, where he was intercepted by Florence police who, alerted by the Pueblo police, detained him until the arrival of the Pueblo police shortly thereafter. They brought him back to Pueblo where he denied the rape.

The testimony of the girl, to which counsel for defendant directs his argument for reversal, was to the effect that in Pueblo the driver of the car came to a stop sign and that the defendant told Aragon to "get lost." The following then took place:

"Q. What did she say? What did Ernestine [the wife] say just before he told John to get lost?

"A. Told him to get off, we were almost at my aunt's house, my Aunt Bennie's."

John Aragon in his testimony also stated that the defendant's wife made the statement, and at that time the defendant was perpetrating the rape in the back seat of the car. The objection was made that the statement of the wife was hearsay. The court held that it was admissible as part of the "whole incident," as a part of the res gestae. In reaching this conclusion the trial court did not err. Upon a proposition so elementary no citation of authority is necessary.

With reference to the argument directed to the venue of the action, there was no evidence presented which would warrant any special instruction upon that question. The jury was told that the defendant was ac-

cused of the crime of statutory rape in the county of Pueblo on a day named. No crime had been committed at the time the party arrived in Fowler, Colorado, a distance of about two miles from the county line between Otero and Pueblo counties. At the speed the car was travelling, in a westerly direction, no more than two or three minutes elapsed before it entered Pueblo county. In the city of Pueblo the offense was in actual progress.

The defendant, on the stand, did not claim that his offense took place in Otero county. He denied any misconduct of any kind. No issue of fact with reference to venue was made by the evidence warranting any special instruction on that subject.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.