The **PEOPLE** of the State of Colorado, Petitioner,

v.

**John C. DEMENT, Respondent.**

No. 81SC219.

Supreme Court of Colorado, En Banc.

April 4, 1983.

---

Dale Tooley, Dist. Atty., Susan J. Trout, Donna Skinner Reed, Deputy Dist. Attys., Denver, for petitioner.

Michael F. Morrissey, Denver, for respondent.

LOHR, Justice.

The defendant, John C. Dement, was convicted of third degree assault[1] after trial to a jury in the Denver County Court. The Denver Superior Court reversed the conviction and ordered dismissal of the case with prejudice, holding that the defendant's right under Article II, Section 16 of the Colorado Constitution to confront a witness against him had been denied when the trial court admitted certain hearsay evidence under the excited utterance exception to the hearsay rule, C.R.E. 803(2). We affirm the reversal of the defendant's conviction but direct that the superior court modify its judgment to order a new trial rather than dismissal of the assault charge.

1. Section 18-3-204, C.R.S.1973 (1978 Repl.Vol. 8).

## I.

The defendant was charged with assaulting a patron of the Club 404 in Denver with a pool cue stick on the night of December 16, 1979. At trial, the prosecution presented the testimony of three witnesses: the victim, Joseph Thompson; the bartender of the club, Marty Mapelli; and an investigating police officer. Thompson and Mapelli described the events of the day of the assault as follows. Thompson spent most of that afternoon and evening at the bar drinking beer, watching football, and playing pool. He admitted that he was quite intoxicated by the time he was assaulted that evening. Mapelli described Thompson as a known instigator of trouble at the bar because he frequently made fun of other pool players while they were engaged in a game.

According to Thompson, he was playing pool when the defendant walked into the bar. Thompson had seen Dement on other occasions but was not acquainted with him. Shortly after Dement entered, Thompson finished his game of pool, and the defendant started a game with others at the same table. The time was approximately 10:30 p.m., and Thompson decided to call it a night. He testified that it was "possible" that, as he prepared to leave, he gave the pool players some "last remarks" in his usual style of poking fun. Thompson then sat down at the bar to say good night to some other customers; a woman named Ginger was seated on his right and a man named Robert on his left. As Thompson stood up to leave, he was struck on the head. Although the blow was to the right-front of his head, the victim did not see his attacker and did not observe the object used to inflict the blow. His glasses were knocked off from the impact, and after they were retrieved by another customer, Thompson was able to see the defendant being restrained by two other men.

The bartender's account of the incident differed somewhat from that of the victim. Shortly before the assault, as Mapelli was cleaning some tables, she noticed that De-

ment and three other men were playing pool, and Thompson "was standing there making his funny little remarks and laugh." Mapelli noticed that two customers, Doug and Ginger (the same Ginger described in Thompson's account), were about to leave by the front door, and she walked over to say good night to them. Mapelli was standing with her back to the assault scene, facing Ginger and Doug, and did not see who attacked Thompson. Upon hearing shouts, she turned around and saw that Thompson was bleeding and Dement was being restrained by one of the other pool players. While testifying, Mapelli added that "[i]t's really hard for me to say what—actually what I even remember, because I was running behind the bar to get a clean bar towel and ice [for the victim]."

Thompson also testified that, about a month after the incident, he and one other man who was at the bar at the time of the assault met with Dement. According to Thompson, at that meeting Dement said, "I'd like to say I'm sorry, but I don't even know why I did it."

The subject of the defendant's appeal to the Denver Superior Court was admission of Thompson's testimony on direct examination about certain statements purportedly made by Ginger shortly after the assault. Prior to eliciting this testimony, an *in camera* conference was held at which defense counsel objected to the proposed testimony on the grounds that it was hearsay and that it would violate the defendant's right to confront the witness against him. The trial court overruled this objection, and direct examination of Thompson resumed. He then described what occurred after he was hit:

> Well, I asked what happened, since of course, at that point, I had no idea, and Ginger said, "He hit you," and pointed at Jack [Dement], being restrained by those guys at the time. She said: "I thought he was coming after me, but he went at you."

After a conference with counsel off the record, the trial judge instructed the jury to disregard all of Ginger's supposed state-ments except "that someone said that . . . the victim was struck by the defendant."

A jury of three found the defendant guilty of third degree assault, and he appealed the judgment entered on the jury verdict to the Denver Superior Court. The superior court reversed the conviction and instructed the county court to dismiss the case with prejudice on the ground that admission of the hearsay evidence violated the defendant's constitutional right to confront a witness against him. We granted the People's petition for certiorari to review the superior court judgment. We address first the question of whether the trial judge properly admitted the evidence under the "excited utterance" exception to the hearsay rule, and second, whether the defendant's constitutional rights were denied.

## II.

Thompson's testimony relating Ginger's statement at the time of the assault was offered by the prosecution to prove the truth of that statement—namely, that Dement had hit Thompson—and therefore the testimony falls within the definition of hearsay. C.R.E. 801(c). The trial court admitted the evidence under the hearsay exception for an "excited utterance," defined by C.R.E. 803(2) as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Such an out-of-court statement is admissible regardless of whether the declarant is available to testify at trial. C.R.E. 803. Further, the declarant may be a bystander or witness to the event rather than an actual participant. 6 *J.H. Wigmore, Evidence* § 1751 at 223 (Chadbourn rev. 1976); *C. McCormick, Evidence* § 297 at 705 (2d ed. 1972).

At least two requirements must be met to qualify a statement as an excited utterance, admissible under the hearsay exception:

> First, there must be some occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Second, the state-

ment of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought.

*C. McCormick, supra,* at 704.[2] Another implicit requirement, one applicable to all testimonial evidence, is that enough direct or circumstantial evidence exists to allow the jury to infer that the declarant had the opportunity to observe the startling occurrence. 6 *Wigmore, supra,* at 222; *McCormick, supra,* at 707. We have previously established essentially the same requirements in cases applying the similar common law *res gestae* hearsay exception prior to adoption of the Colorado Rules of Evidence. *Lancaster v. People,* 200 Colo. 448, 615 P.2d 720 (1980); *Dolan v. People,* 168 Colo. 19, 449 P.2d 828 (1969). The rationale for the exception is that the declarant's powers of reflection and ability to fabricate or misrepresent the events observed are momentarily suspended while the declarant is under the stress of excitement from a startling event. *McCormick, supra,* at 704. Unlike some other hearsay exceptions, excited utterance evidence is not limited to unavailable declarants. The reason is that the extrajudicial assertion is likely to be better than a statement from the witness at trial after time has permitted reflection or memory has faded. *See* 6 *Wigmore, supra,* § 1748 at 199.

■ We believe that sufficient evidence was adduced to bring the contested statement within the scope of the excited utterance exception. More than enough evidence of a "startling event," the occurrence of an assault, was presented, and Ginger's remarks were made only moments later in reaction to the event. The substance of the statement, "he hit you," and Thompson's testimony that the declarant was sitting close to him at the time of the assault were sufficient evidence to allow an inference that Ginger was in a position to observe the incident. We hold that the trial court was correct in ruling that the challenged evidence fell within the excited utterance exception to the hearsay rule.

## III.

■ The defendant argues that admission of the challenged testimony violated his right "to meet the witnesses against him face to face" under *Colo. Const.* Art. II, § 16, even if the evidence was properly admissible under the Colorado Rules of Evidence. We do not believe that C.R.E. 803(2) is unconstitutional as applied in every criminal case, but under the facts and circumstances of the present case, admission of the hearsay evidence under that rule without the opportunity to cross-examine the declarant in court denied the defendant his confrontation right.

We have previously held that:

> [t]he essence of the right to confront one's accusers is to meet adverse witnesses face-to-face, *Colo. Const.* Art. II, Sec. 16, and to have opportunity to cross-examine them. *Simms v. People,* 174 Colo. 85, 482 P.2d 974. The purpose of the rule of confrontation and cross-examination is to prevent conviction by *ex parte* affidavits, to sift the conscience of the witness, and to test his recollection to see if his story is worthy of belief, *People v. Scheidt,* 182 Colo. 374, 513 P.2d 446.

*People v. Bastardo,* 191 Colo. 521, 524–25, 554 P.2d 297, 300 (1976).

The defendant's argument is premised only on the Colorado Constitution and not on his Sixth Amendment right under the United States Constitution "to be confronted with the witnesses against him."[3] Although the federal constitution does not contain the "face to face" language found in the Colorado Constitution, the United States Supreme Court has interpreted the Sixth Amendment as reflecting "a preference for face-to-face confrontation at tri-

---

2. Some courts have also required that the substance of the assertion relate to the startling event. 6 *Wigmore, supra,* at 222; *McCormick, supra,* at 707.

3. The federal confrontation right is applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

al." [4] *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 606 (1980). The cases applying the federal right are relevant to our present inquiry because they focus on the purposes of face-to-face confrontation and require either the presence of adverse witnesses for cross-examination or, in appropriate cases, an equivalent substitute in keeping with the purposes and objectives of cross-examination.

■ The confrontation right and hearsay rules stem from the same roots and are designed to protect similar interests based on the premise that testimony is much more reliable when given under oath at trial, where the declarant is subject to cross-examination and the jury may observe his demeanor. *Id.; Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). However, the United States Supreme Court has rejected the view that admissibility of evidence under a hearsay exception is sufficient to satisfy the defendant's confrontation right in every case:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page,* 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968); *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965).

*California v. Green,* 399 U.S. 149, 155–156, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489, 495 (1970). Competing interests in effective law enforcement and in the development and precise formulation of rules of evidence are valid considerations to balance against the confrontation right in appropriate cases. *Ohio v. Roberts, supra.*

■ The United States Supreme Court applies a case-by-case analysis when considering challenges to hearsay evidence on federal constitutional grounds, and we believe this is the appropriate course to follow in considering an alleged violation of *Colo. Const.* Art. II, § 16. Adoption of an all-or-nothing approach holding the excited utterance exception either constitutional or unconstitutional in all criminal cases might be the easier rule to apply but too often would lead to unjust results.[5] On the one hand, a rejection of all evidence under this exception would unduly favor criminal defendants and, in many cases, undermine the truth-seeking process. On the other hand, a wholesale admission of every such extrajudicial assertion, especially when the declarant is apparently available to testify but not present at trial, without examination of the type of evidence involved and the circumstances of the case can run afoul of the interests that the confrontation right was designed to protect. *See generally* Quinn, *Hearsay in Criminal Cases Under The Colorado Rules of Evidence: An Overview,* 50 U.Colo.L.Rev. 277, 279–288 (1979).

■ In *Ohio v. Roberts, supra,* the Supreme Court established a two-part analysis to apply in federal confrontation clause cases. First, because the clause reflects a "preference for face-to-face accusation," a "rule of necessity" applies, placing a burden on the prosecution either to produce the hearsay declarant for cross-examination or to demonstrate his unavailability. *Id.* at 65,

**4.** *Webster's Third New International Dictionary* (1961) defines "confront": "to stand facing or opposing ... [to] FACE: stand up to ... ( [as] an accuser in court)." *Black's Law Dictionary* (4th ed. 1968) defines "confrontation": "In criminal law, the act of setting a witness face to face with the prisoner..."

**5.** *See* 5 J.H. Wigmore, *Evidence,* § 1397 at 185 (Chadbourn Rev.1974): "... it will probably not be gainsaid that uncertainty as to the permissible dimensions of any system of hearsay law is preferable to permanently constitutionalizing or freezing that law into its ancient molds."

100 S.Ct. at 2538, 65 L.Ed.2d at 607. This rule of necessity implicit in the confrontation right is, in effect, a constitutional "best evidence" rule, establishing a preference for the most reliable and trustworthy evidence available in criminal cases. *See generally* Westen, *The Future of Confrontation,* 77 Mich.L.Rev. 1185 (1979).[6] Unavailability "in the constitutional sense" is established by the prosecution when good faith, reasonable efforts have been made to produce the witness without success. *Ohio v. Roberts,* 448 U.S. at 74–75, 100 S.Ct. at 2543, 65 L.Ed.2d at 613. However, the burden on the prosecution to produce the declarant for trial or to prove his unavailability applies only "in the usual case," and is subject to an exception when "the utility of trial confrontation [is very] remote." *Id.* at 65, n. 7, 100 S.Ct. at 2538, n. 7, 65 L.Ed.2d at 607, n. 7. For example, in *Dutton v. Evans, supra,* the prosecution was not required to produce an available witness when, among other factors, the hearsay evidence was not "crucial" or "devastating," other evidence established that the hearsay declarant had personal knowledge of the fact asserted in the hearsay declaration, the statement was spontaneous and against the declarant's penal interest, and defense counsel cross-examined an eyewitness to the crimé at great length.

■ The second part of the analysis is applied in cases where the prosecution has established the unavailability of the hearsay declarant. When the defendant is denied the opportunity to cross-examine the declarant at trial, only evidence bearing sufficient "indicia of reliability" is admissible to assure "no material departure" from the purpose underlying the confrontation right to augment accuracy in the factfinding process. *Ohio v. Roberts,* 448 U.S. at 65, 100 S.Ct. 2539, 65 L.Ed.2d at 607. Reliability of evidence falling within a "firmly rooted" hearsay exception resting upon "solid foundations" may be inferred. *Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. As examples of such well-established hearsay exceptions, the court in *Ohio v. Roberts* cited dying declarations and cross-examined prior-trial testimony.[7]

■ This analytical framework applied in federal cases provides useful guidance for our consideration of Dement's rights under *Colo. Const.* Art. II, § 16 because it is designed to uphold the underlying purposes of face-to-face confrontation and cross-examination. In testing the admissibility of Ginger's declaration under the standards developed in the federal cases, however, we need not go beyond the first step of the analysis because the prosecution failed to carry its burden to produce the hearsay declarant for cross-examination or to establish her unavailability.[8] The prosecution did not attempt to make any showing whatsoever regarding the declarant's availability even though her testimony at trial would have substantially furthered the truth-seeking function of confrontation. The record establishes that none of the three prosecu-

**6.** It has also been suggested that the prosecutorial burden to produce the hearsay declarant for cross-examination serves a legitimate aim of the criminal justice system to check the potential temptation of prosecutors to rely on hearsay evidence in presenting a case because of negligence, or concern that the witness may be less than convincing on the stand. *See* Comment, *Confrontation and the Hearsay Rule,* 75 Yale L.J. 1434, 1439 (1966); *Gregory v. State,* 40 Md.App. 297, 327, 391 A.2d 437, 455 (1978).

**7.** The District of Columbia Court of Appeals relied on *Ohio v. Roberts* to hold that the spontaneous utterance exception rests on such a solid foundation as to permit an inference that statements fitting within the exception comport with the federal confrontation right. *Harrison v. United States,* 435 A.2d 734 (D.C.App.1981).

Two judges dissented, stating that the evidence, when examined under the totality of the circumstances, did not have sufficient indicia of reliability, rejecting the majority's holding that reliability could be inferred from the exception itself.

**8.** On retrial, should the prosecution establish that good faith, reasonable efforts have failed to secure Ginger as a witness, the trial court must determine whether the out-of-court statement is sufficiently reliable under the constitutional standard before allowing its admission. We do not decide this question on the present state of the record because our opinion would be merely advisory if the declarant does testify on retrial or if different evidence is then presented.

tion witnesses, including the victim and the bartender, actually saw the defendant assault Thompson. Despite the presence at the bar of several possible eyewitnesses to the assault, the prosecutor's only eyewitness evidence identifying Dement as the assailant was that of the hearsay declarant, Ginger. Cross-examination of Ginger at trial would have aided the jury in determining the weight to be given her out-of-court statement. The assault occurred in a bar where most patrons presumably had been drinking, and lighting conditions might not have been conducive to easy identification. According to Thompson, Ginger did not mention the defendant by name but only pointed in his direction where at least two or three other men were standing at the time. The evidence was in conflict as to how well Ginger was positioned to see the assault. With these facts, defense counsel had several legitimate areas of inquiry to explore on cross-examination to test Ginger's ability to perceive the events accurately. This is not a case where the utility of trial confrontation is remote. Compare this case with *Dutton v. Evans, supra.* Cross-examination of Thompson alone was not a sufficient substitute for the defendant's confrontation right.

 Our holding that the prosecution was initially required to produce Ginger as a witness or to show her unavailability does not establish a like rule for every

criminal case[9] nor does it constitute a rewriting of C.R.E. 803(2). We recognize that in cases such as *Dutton v. Evans, supra,* where the utility of cross-examination is remote and the hearsay evidence is not central to the prosecution's case, the defendant's confrontation right is not violated when the declarant, though available, does not testify at trial. However, in this case the hearsay evidence was important to the prosecution and no adequate substitute for cross-examination of Ginger was available. Other courts have recognized the importance of producing an available witness for cross-examination even though the hearsay exception does not require a showing of unavailability. *United States v. Oates,* 560 F.2d 45 (2d Cir.1977) (business records exception); *Gregory v. State,* 40 Md.App. 297, 391 A.2d 437 (1978) (business records exception). The violation of the defendant's right to confront this eyewitness requires reversal of the conviction and remand for a new trial.[10]

Our decision in this case is not contrary to other opinions holding that certain evidence was properly admissible under the excited utterance exception or *res gestae* exception without infringing the defendant's confrontation right.[11] A large number of cases have allowed hearsay evidence of statements made by young children who were the victims of sexual assault. *E.g., Lancas-*

**9.** In *Morse v. People,* 180 Colo. 49, 501 P.2d 1328 (1972), we rejected an argument that failure to make a showing of unavailability of witnesses whose depositions were used at trial without objection denied the defendant's confrontation right. We reasoned that the right was waived when defense counsel made the choice—as a matter of trial strategy to lessen the impact of adverse testimony—to cross-examine the witnesses during the depositions, not at trial.

**10.** Reversal of the conviction for constitutional error is required because admission of the challenged evidence was prejudicial to the defendant. After reviewing all of the evidence presented at trial and taking into account the jury's function as factfinder, we cannot conclude that the error complained of did not contribute to the verdict obtained and cannot declare a belief that it was harmless beyond a reasonable doubt. *See Chapman v. California,*

386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979).

**11.** We note also that several previous Colorado cases have considered the admissibility of evidence under the *res gestae* exception only without addressing the confrontation right. *People v. Roark,* 643 P.2d 756 (Colo.1982); *Dolan v. People,* 168 Colo. 19, 449 P.2d 828 (1969); *Fitzpatrick v. People,* 159 Colo. 485, 412 P.2d 893 (1966); *Martinez v. People,* 55 Colo. 51, 132 P. 64 (1913). In other cases squarely addressing the relationship between the confrontation right and the use of out-of-court inconsistent statements for impeachment of prosecution witnesses, no constitutional violation was found because the witnesses were available at trial for cross-examination. *People v. Bastardo,* 191 Colo. 521, 554 P.2d 297 (1976); *Gaitan v. People,* 167 Colo. 395, 447 P.2d 1001 (1968).

*ter v. People, supra (see also* cases cited therein); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick,* 604 F.2d 1199 (9th Cir.1979); *Jackson v. State,* 31 Md.App. 332, 356 A.2d 299 (1976); *cf. People in the Interest of O.E.P.,* 654 P.2d 312 (Colo.1982) (civil case involving dependency or neglect). In these cases, unlike the present one, the declarant is deemed "unavailable" due to age, and admissibility of such hearsay depends upon an analysis of the reliability of the evidence. Other cases allowing hearsay evidence under this exception to the hearsay rule are also distinguishable. *McLaughlin v. Vinzant,* 522 F.2d 448 (1st Cir.1975), *cert. denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975) (the hearsay declarant was an eyewitness but another eyewitness also identified the defendant as the perpetrator at trial); *Harmon v. Anderson,* 495 F.Supp. 341 (E.D.Mich.1980) (the out-of-court statement by a rape victim that she had been raped by two men was not crucial to the prosecution and was merely cumulative to the victim's testimony at trial).

■■■ We do not agree with the superior court that the appropriate remedy for the constitutional error is dismissal of the assault charge with prejudice. We affirm the portion of the superior court judgment reversing the defendant's conviction but reverse the dismissal of the assault charge and direct that the case be remanded to the county court for a new trial.