**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Clifton BLECHA, Defendant–Appellant.**

**No. 94CA1097.**

Colorado Court of Appeals, Div. I.

Nov. 29, 1996.

Rehearing Denied Dec. 27, 1996.

Certiorari Granted July 28, 1997.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Matthew S. Holman, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Clifton Blecha, appeals a judgment of conviction entered on a jury verdict finding him guilty of first degree murder and conspiracy to commit murder. He also challenges the terms of the sentence as set out in the mittimus. We affirm the conviction but remand for further findings and correction of the mittimus.

The staff of the Limon Correctional Facility discovered the body of an inmate who had died of strangulation in his cell. Following an investigation defendant was charged, along with two other inmates, with first degree murder and conspiracy to commit first degree murder. The defendants were tried separately with the defendant's trial going second.

At defendant's trial, an inmate witness testified that he saw defendant, along with two other defendants, enter the victim's cell on the day he was murdered. The witness looked into the cell and saw a codefendant holding the victim in a headlock, defendant standing before the victim with both hands up looking like he was about to grab him, and the third defendant standing with a cord in his hands. The witness later observed the three defendants putting the victim on his bunk. The witness also testified that a couple of days later one of the codefendants called him aside and warned him to stay quiet.

Another inmate testified that he and two others had murdered an inmate at another institution and that he dispatched a letter to one of the codefendants instructing the codefendant to murder the victim because he was an informant in that murder case. The codefendant reported back to the witness that, after receiving the letter, he, defendant, and another inmate killed the victim.

The conviction here at issue followed.

I.

Defendant first contends the trial court failed to advise him properly regarding his right to testify pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984). We disagree.

The right to testify is a fundamental right protected by the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution. Because this right is fundamental and integral to the fundamental fairness of a criminal trial, waiver of the right must be voluntary, knowing, and intentional. *People v. Curtis, supra.*

According to *Curtis*, the trial court must advise defendant on-the-record, but outside the presence of the jury, that: 1) he has a right to testify; 2) the decision to testify is

solely his, despite the advice of his attorney; 3) if he does testify, the prosecutor may cross-examine him and evidence of prior felony convictions may be disclosed to the jury; 4) the jury may be instructed to consider felony convictions only as they bear on defendant's credibility; 5) he has a right not to testify; and 6) the jury may be instructed not to draw any inferences against defendant for not testifying. This advisement is designed to assure that the defendant can make an informed decision.

Here, the court advised the defendant, outside the presence of the jury, as follows:

THE COURT: Mr. Blecha, I'm going to do what's called a *Curtis* advisement, that's to advise you as to your right to testify or not testify in this case.

I want you to understand that you have a constitutional right to testify in your own behalf. That the decision as to whether or not you take the witness stand to testify is solely your decision, not the decision of your attorneys or not the decision of the prosecution; it's solely your decision. You have to make that decision freely, voluntarily. You understand that?

MR. BLECHA: Yes.

THE COURT: Mr. Blecha, you also have a constitutional right to remain silent and not to testify in your own defense. And no one can force you to take the witness stand against your will. You understand that?

MR. BLECHA: Yes.

THE COURT: You understand, Mr. Blecha, that if you choose to testify, you will be subject to cross-examination by the district attorney. If you have a prior felony conviction, the prosecution may ask you about your prior felony conviction, thereby disclosing that to the jury as it relates to your credibility as a witness. You understand that?

MR. BLECHA: Yes.

THE COURT: You also understand that if you elect not to testify, you can request a jury instruction to the effect that the jury is not to consider in any manner the fact that you did not testify in your own defense. They can't consider that during their deliberation in any manner against

you, use that against you. You understand that?

MR. BLECHA: Yes.

The court went on to explain that if defendant testified, he would be subject to the same rules as any other witness. The record also indicates defendant discussed the matter with counsel. Ultimately, defendant had no questions for the court and answered "yes" when asked if he fully understood his right to testify. Defendant decided not to testify.

The trial court failed explicitly to advise defendant that the jury could be given a limiting instruction to consider evidence of prior felonies *only* as it related to defendant's credibility as a witness. In every other respect, however, the trial court advisement was sufficient under *Curtis*.

The omission does not require reversal. Our supreme court in *People v. Gray*, 920 P.2d 787, 790 (1996) and *People v. Deskins*, 927 P.2d 368 (Colo.1996) affirmed its reluctance to adopt a "prescribed litany or formula which must be followed in advising the defendant of his right to testify," and, in *Gray*, explained that:

A satisfactory *Curtis* advisement should inform the defendant that the defendant has the right to testify or not to testify; the decision to testify is personal; the prosecution would be able to cross-examine the defendant and thus prior felony convictions could be disclosed to the jury; the limited purpose for which such prior felony convictions would be admitted; and, the consequences of testifying.

*People v. Gray, supra,* 920 P.2d at 791.

Here, the court advised defendant that the jury could consider evidence of prior felonies as it related to his credibility as a witness. In *Gray*, the court acknowledged that clarity in an advisement is desirable, but concluded that such a general advisement does not constitute reversible error. Because the advisement here substantially complies with the requirements of *Curtis* and *Gray*, we find it is sufficient to demonstrate a valid waiver by defendant of his right to testify.

## II.

Defendant next contends the trial court violated his fundamental right to confront and cross-examine witnesses by admitting the hearsay statements attributed to his two codefendants. We disagree.

The first hearsay statement was made by a codefendant to the eyewitness, admonishing the eyewitness to keep quiet. The second hearsay statement was made by the other codefendant, reporting back that the victim had been murdered as requested in the letter, describing the method and weapon used, and identifying the participants in the murder.

Hearsay statements are generally inadmissible. CRE 802. Hearsay statements are statements other than those made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. CRE 801. There is no dispute that the statements offered here were hearsay and were, therefore, inadmissible unless an exception to the rule against hearsay applies or the statements were otherwise declared inadmissible.

### A.

#### 1.

■ First, defendant argues the statement by the codefendant to the eyewitness to keep quiet was not admissible as non-hearsay pursuant to CRE 801(d)(2)(E). We agree.

■ A co-conspirator's statement is admissible as non-hearsay if offered against a party and made during the course of or in furtherance of a conspiracy. CRE 801(d)(2)(E); *see Williams v. People,* 724 P.2d 1279 (Colo.1986). However, statements made after the purpose of the conspiracy has been accomplished are inadmissible under the rule unless they are so connected with the purpose of the conspiracy as to be a part of the *res gestae. White v. People,* 79 Colo. 261, 245 P. 349 (1926). For such statements, there must be specific evidence of a plan of concealment to demonstrate that the conspiracy is pending when the statements are made. *Villafranca v. People,* 194 Colo. 472, 573 P.2d 540 (1978).

In *People v. Orr,* 39 Colo.App. 289, 566 P.2d 1361 (1977), a division of this court affirmed the admission of testimony containing a co-conspirator's hearsay statement made after the crime had been completed. In *Orr,* however, the court found independent evidence of an agreement to conceal the crime. The day after committing the crime, the defendants had all agreed on an alibi story they would tell the police.

In contrast, here, while it is likely the participants in the murder wished to remain undiscovered, there is no evidence in the record indicating that defendant and his codefendants expressly conspired to conceal the crime. Indeed, the inmates had been in lock-down from the time of the murder until the admonishment was given the witness by the codefendant; this reduced substantially the ability of the conspirators to conspire further. We conclude that in this instance any conspiracy to commit murder ceased when the victim died. Therefore, the statement does not qualify as non-hearsay under CRE 801(d)(2)(E).

#### 2.

■ Second, defendant argues that the codefendant's statement to the eyewitness was not admissible as a declaration against penal interest pursuant to CRE 804(b)(3). Again, we agree.

The hearsay exception in CRE 804(b)(3) applies only when the declarant is unavailable to testify. Here, the codefendant was initially unavailable because he had a right to remain silent and the trial court so found in a pretrial hearing. However, the codefendant was acquitted before defendant's trial began.

Therefore, the codefendant was available to testify and CRE 804(b)(3) cannot apply.

#### 3.

■ Because we find neither hearsay exception applies to the codefendant's statement to the eyewitness, the trial court erred in admitting it at trial. However, we find the error harmless.

Pursuant to Crim. P. 52(a), harmless error is an irregularity that does not affect the

substantial rights of the defendant. The proper inquiry is whether the error substantially affected the verdict or the fairness of the proceedings. As to the admission of this statement, we conclude that it did not. *See People v. Fuller*, 788 P.2d 741 (Colo.1990).

In evaluating the harmlessness of an erroneous ruling in the admission of testimony, a court should look to:

> the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case.

*Merritt v. People*, 842 P.2d 162, 169 (Colo. 1992).

Here, codefendant's statement to the eyewitness had very little impact on defendant's case. First, it did not directly implicate defendant in the murder. Second, in light of the properly admitted eyewitness testimony implicating defendant, it was cumulative. The error in admitting the statement did not contribute to defendant's conviction, nor did it prejudice the proceedings. Therefore, the trial court did not err in denying defendant's motion for a new trial on this basis.

### B.

#### 1.

■ Next, defendant contends the trial court erred in admitting the hearsay statement of the second codefendant reporting to the sender of the letter that the requested murder had been carried out, the method and weapon used, and identifying defendant as a participant in the murder, as a declaration against the second codefendant's penal interest pursuant to CRE 804(b)(3).

The hearsay exception in CRE 804(b)(3) permits the introduction of hearsay statements when the declarant is unavailable and when "at the time of its making [the statement] so far ... tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." CRE 804(b)(3). The second code-

fendant was unavailable and the statement tended to subject the codefendant to criminal liability.

Defendant argues that a reasonable person in the second codefendant's position might make such a statement regardless of its truth. Defendant essentially contends that the prison community is so distorted from life on the outside that normal assumptions, rules, and motivations do not apply. Thus, a reasonable inmate might make an untrue incriminating statement to enhance his reputation, to appear tough, to avoid harsh treatment by other inmates, or to manipulate the penal system. Therefore, defendant argues, the statement loses its presumption of truth or reliability. We are not convinced.

In a similar case, *United States v. Mills*, 704 F.2d 1553 (11th Cir.1983), the defendant was convicted of murder and conspiracy to commit murder. The victim, the defendant, and most of the witnesses were prison inmates. The murder was solicited by letter from an inmate at Leavenworth and was committed at the United States Penitentiary in Atlanta, Georgia, and, again as here, involved a white supremacist group. The trial dealt at length with prison culture and the defendant represented himself because he believed he was the only one who could adequately examine inmates concerning that culture.

After the murder, the Leavenworth inmate who had requested the murder was heard by others, including a guard, to exclaim, "we have got him" and "those punks will learn not to f___ with us." These statements were admitted at defendant's trial on the issue of motive through those who overheard them pursuant to Fed.R.Evid. 804(b)(3), which is identical to CRE 804(b)(3). On appeal, defendant argued that a statement made by a prison inmate bragging to another inmate about crimes committed is not against penal interest at the time or under the circumstances it was made. The court there found this argument to be disingenuous, as we agree here.

The CRE 804(b)(3) exception for statements against penal interest presumes such a statement is trustworthy. In the case of

dual inculpatory statements, however, a codefendant may have a motive for implicating someone else in the crime. A number of federal circuit courts routinely engage in a three-prong analysis under Fed.R.Evid. 804(b)(3), requiring: 1) unavailability of the declarant; 2) a statement by the declarant against his interest; and 3) corroborating circumstances that indicate the trustworthiness of the statement. *See United States v. Katsougrakis,* 715 F.2d 769 (2d Cir.1983); *United States v. Riley,* 657 F.2d 1377 (8th Cir.1981).

Under the third prong of the test, the court in *United States v. Bailey,* 581 F.2d 341, 349 (3d Cir.1978) advised:

> The trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely.

Courts have found statements inadmissible under the rule in circumstances where they were made to a police officer or other official with whom the defendant would have wanted to curry favor. *See United States v. Riley, supra* (statement inadmissible because made while in custody and facts indicated defendant, out of fear of losing custody of child, might want to draw attention to another and away from herself); *United States v. Bailey, supra* (statement inadmissible as untrustworthy because made during negotiations for reduction of charges). *Cf. United States v. Katsougrakis, supra,* 715 F.2d at 775 (statement admissible because "declarant was approaching death and was talking privately with his friend when the challenged admission was made. He was not conversing with police or other government agents whose favor he might be expected to curry.").

Here, there is nothing in the record to indicate the codefendant's statement to the inmate sending the letter was anything more than an acknowledgment that the job requested had been accomplished. The circumstances under which the statement was made, including the person to whom it was made, are not in any way suspect. Therefore, we find no reason to view this as anything but a clear statement against penal interest that happens also to implicate defendant. The trial court properly admitted the statement under CRE 804(b)(3) as an exception to the rule against hearsay.

### 2.

▐██▌ Defendant next contends the admission of the second codefendant's statement violated his fundamental right to confront and cross-examine witnesses. We disagree.

A hearsay statement which is admissible and admitted either as non-hearsay or under an exception to the hearsay rule implicates a person's constitutional right to confront the witnesses against him. The ability to confront and cross-examine witnesses promotes reliability and is a right protected by the Sixth Amendment and Article II, Section 16 of the Colorado Constitution.

While face-to-face confrontation is preferred, a court may, in its discretion, allow a party to introduce hearsay statements when the declarant is unavailable and the evidence bears sufficient indicia of reliability. *People v. Dement,* 661 P.2d 675 (Colo.1983) (adopting the U.S. Supreme Court's analysis in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

First, the prosecutor must make a good faith and reasonable effort to produce the declarant for trial. Second, the evidence must carry sufficient indicia of reliability.

> However, the prosecutor is not required to produce the declarant, if the evidence is not 'crucial' or 'devastating,' other evidence established that the hearsay declarant had personal knowledge of the fact asserted in the hearsay declaration, the statement was spontaneous and against the declarant's penal interest, and defense counsel cross-examined an eyewitness to the crime at great length.

*People v. Dement, supra,* 661 P.2d at 681.

If the evidence falls squarely within an exception to the hearsay rule, its reliability may be inferred. *People v. Dement, supra.*

Here, the codefendant was unavailable to testify because his trial was pending and he had a constitutional right to remain silent.

The statement meets the second prong of the *Ohio v. Roberts* test because the statement is admissible as a declaration against penal interest. Therefore, reliability may be inferred.

In addition, in light of the uncontroverted eyewitness testimony and testimony concerning defendant's own inculpatory statements made to inmates, the codefendant's statement was not devastating to defendant's case. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Therefore, the trial court did not abuse its discretion in admitting the statement of the second codefendant.

### III.

■ Defendant next argues the trial court erred in allowing the prosecutor to impeach a defense witness with statements made by the witness' psychiatrist indicating that the witness had a tendency to exaggerate. We disagree.

It is within the trial court's discretion to determine the scope and limits of cross-examination. *People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

Here, on cross-examination, the prosecutor, referring to a report prepared by a psychiatrist who had evaluated the witness, asked if the witness was aware the psychiatrist had stated he tended to exaggerate and might try to manipulate the system. The People argue that the statements were not offered to prove the truth of the matter asserted, but rather, to impeach the witness' assertion that he had never suffered from mental health problems.

Upon reviewing the record, we conclude that it appears the prosecutor was attempting to impeach the witness' credibility by introducing evidence of his past mental health history. Questions by the prosecutor focused on instances in which the witness had undergone mental health treatment and had attempted to manipulate or harass the corrections system in Colorado and Missouri. The prosecutor did not dwell on the content of the psychiatrist's evaluation.

Because we agree that the prosecutor's questions went to the fact of mental health treatment rather than to the findings during that treatment, we reject defendant's contention that it constituted improper impeachment.

### IV.

■ Defendant next contends the trial court erred in submitting a jury instruction on complicity patterned after *COLJI–Crim.* No. 6:04 (1983). We find no reversible error.

Because defendant did not object to the instruction, we review the court's action pursuant to Crim. P. 52(b), under a plain error standard, finding error only if review of the entire record demonstrates a reasonable possibility that the improper instruction contributed to the defendant's conviction. *Espinoza v. People,* 712 P.2d 476 (Colo.1985).

The court gave the following instruction, patterned after *COLJI–Crim.* No. 6:04 (1983):

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed;

2. Another person must have committed all or part of the crime;

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime;

4. The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.

Section 18–1–603, C.R.S. (1986 Repl.Vol. 8B) defines complicity as:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense.

Defendant contends the jury instruction lessens the prosecution's burden of proof regarding defendant's mental state, allowing a jury to convict solely on the basis that defendant knew another party intended to commit

part of a crime, rather than requiring the prosecution to prove that defendant intended to promote commission of the offense.

In *People v. Rodriguez, supra,* our supreme court recently considered the pattern jury instruction and held that it adequately advises the jury of the requisite *mens rea* and that since complicity is not a substantive crime, the statutory definitions of *mens rea* do not apply.

Defendant relies on that portion of the *Rodriguez* opinion in which the court disapproved of the "all or part" language of the instruction. However, defendant did not raise this issue until his reply brief and fails to explain how this language prejudiced him. Therefore, we do not consider this argument further. *People v. Czemerynski,* 786 P.2d 1100 (1990).

## V.

 Defendant next contends the trial court erred in denying his motion for mistrial and/or a new trial because the jury engaged in unsupervised and unlimited viewing of a videotape properly admitted into evidence which showed the crime scene prior to the removal of the victim, the removal of the victim, and the medical examination. We disagree.

It is reversible error for a court to allow the unsupervised and repetitive use by a jury of a videotape or audiotape introduced as evidence. *See People v. Aponte,* 867 P.2d 183 (Colo.App.1993); *People v. Talley,* 824 P.2d 65 (Colo.App.1991). In *Aponte,* the videotape in question contained statements of witnesses to which the jury should not have had unsupervised access during its deliberations.

Here, however, the jury did not hear the audio portion of the videotape. In addition, the trial court found that the videotape was nontestimonial and was not shocking or inflammatory. The trial court concluded, and we agree, that the videotape was similar in character to still photographs which jurors are normally permitted to review during deliberation.

The court polled the entire jury and was satisfied that no juror had listened to any audio portion on the tape. We find no basis in the record to conclude the jury's review of the silent videotape during deliberations was in any way prejudicial. Therefore, the trial court properly denied defendant's motion for a mistrial or new trial on this basis.

## VI.

Inasmuch as we have essentially rejected all defendant's assertions of error, we necessarily also reject his contention that we should reverse his conviction because of the cumulative effect of the alleged errors. *See People v. Roy,* 723 P.2d 1345 (Colo.1986).

## VII.

 Lastly, defendant argues the mittimus does not accurately reflect the court's oral ruling regarding defendant's sentences. We agree and remand for clarification of the sentence.

In its oral ruling on April 4, 1994, the court sentenced defendant to life imprisonment on count one, murder in the first degree, and twenty-four years on count two, conspiracy to commit murder in the first degree. The court indicated the two sentences were to run concurrent to each other and consecutive to the sentences defendant was serving at the time of the offense. The mittimus, however, does not indicate the sentences on counts one and two are to run concurrently as to each other.

The judgment is affirmed. The cause is remanded for review by the trial court to ascertain its intention with respect to whether the sentences are to run concurrently or consecutively to each other and for amendment of the mittimus if appropriate.

METZGER and HUME, JJ., concur.