## No. 23075.

FRANK TANKSLEY *v.* THE PEOPLE OF THE STATE OF COLORADO.

(464 P.2d 862)

Decided February 2, 1970.    Rehearing denied February 24, 1970.

EDWARD H. SHERMAN, Public Defender, TRUMAN E. COLES, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, George E. DeRoos, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Lee.

Frank Tanksley was convicted of aggravated robbery in the Denver District Court and by this writ of error seeks reversal of the judgment of conviction.

The events out of which the charge against Tanksley arose occurred during the late evening hours of October 27, 1966. At that time Stephen Owen was the employee in charge of a Martin Oil service station located at 1245 West Alameda Avenue. At approximately 11 p.m., Owen was robbed by two unmasked men whom he later identified as Frank Tanksley and Richard Geiger. The men entered the station on the pretext of buying cigarettes, and, as Owen was getting them from a storeroom, Geiger pulled out a gun, pointed it at Owen and said, "This is a stickup." Owen then handed over the currency and coins, including a coin changer, in an amount later determined to be approximately forty dollars. Owen was ordered into the storeroom and told to remain there for five minutes. He did so and thereafter notified the police of the robbery.

On October 30, 1966, Owen encountered Tanksley and Geiger under the following circumstances. Owen and one Steven Bert, who was Owen's immediate supervisor, had been working the evening shift together at the service station. They closed the station at midnight and went to the Pink Elephant Bar on East Colfax Avenue for refreshments. On entering the barroom Owen recognized Tanksley and Geiger seated at the bar, and he advised Bert that they were the two men who had robbed him. He then asked Bert to call the police. Tanksley and Geiger apparently recognized Owen, and Geiger beckoned Owen to join them. Tanksley, upon seeing Bert at the telephone,

walked over to him and told Bert, "You don't want to call your girl friend now." Bert hung up the phone and returned to the area where the men were seated.

All four drank, talked generally, and played a bowling machine, remaining in the tavern for about forty-five minutes. During this time Bert again attempted to call the police but was prevented from doing so by Tanksley. Owen twice asked the bartender to call the police, but he declined to do so.

Eventually, Owen and Bert left the tavern, followed by Tanksley and Geiger. Bert took off running in an attempt to locate a police car. Apparently confused as to his direction, he ran around the block and back into the area where Tanksley, Geiger and Owen were standing. Then all four got into Owen's car and Owen was ordered at gunpoint by Geiger to drive around town. Owen identified the gun as the same gun used in the robbery.

The continuity of events is not clear except that Tanksley repeatedly encouraged Geiger to shoot the two men. Geiger responded he would not do so unless he had to. At one point Bert attempted to escape from the car but was grabbed by Tanksley who again urged Geiger to shoot Bert. Bert described the events as follows: "I turned my head and I saw the barrel of the gun and Steve Owen said, 'Don't shoot us. Don't shoot. We don't want to get hurt. We don't want to cause any trouble.' At that time or at that stage, Steve, Geiger and Tanksley decided Steve should drive again and we switched again. After we switched again, Steve got in the car and started driving and said, 'I know where there is some money. I will take you to it. Just leave us alone. We don't want any trouble.'"

Owen then drove to the Martin service station where he and Geiger went inside. Owen opened the safe and took the day's receipts of $99 from the safe and gave it to Geiger who, upon returning to the car, shared the money with Tanksley. Owen was ordered to drive back to the Pink Elephant Bar where Tanksley and Geiger presum-

ably were to separate. However, they changed their minds and refused to leave.

Owen then commenced speeding and running red lights to attract the attention of the police. He succeeded in this purpose. A patrol car following with red light flashing signaled Owen to pull over to the curb, which he did. Geiger and Tanksley immediately got out of the car and left the scene. The patrolman, who was alone, arrived to interrogate Owen and Bert, placing them in his car where they told him of the robbery of October 27 and the events of the evening. An emergency radio call for assistance interrupted their conversation and the officer told Owen and Bert to wait in the car and he would return, which he did. In the meantime, Tanksley and Geiger had taken refuge in the restaurant area of the Olin Hotel. Shortly thereafter they were apprehended by another officer who had responded to a call for assistance. At the time of their arrest, Geiger had the gun aimed at the officer, and Tanksley, who was next to Geiger, shouted, "Shoot him. Shoot him." The officer drew his service revolver and ordered Geiger and Tanksley to surrender, which they did.

Both Tanksley and Geiger were charged with aggravated robbery and conspiracy to commit aggravated robbery. Geiger entered a plea of guilty to the robbery count and Tanksley pleaded not guilty and was tried alone. At the conclusion of the evidence, the conspiracy count was dismissed on motion of the district attorney. The jury returned its verdict of guilty to the robbery count.

Tanksley contends that the trial court committed prejudicial error in several respects and that the judgment of conviction must therefore be reversed. We do not agree and therefore affirm the judgment.

I.

Tanksley's first alleged error relates to the admission into evidence of the events of the evening of October 30, which have been set forth herein in some detail, insofar

as such events showed criminal conduct on his part other than that charged in the information. Without attempting to analyze specifically what additional charges might have resulted from the activities of Tanksley and Geiger on the evening of October 30, it is apparent that Tanksley and Geiger were involved in a kidnapping and assault with a deadly weapon on Owen and Bert; an assault with a deadly weapon upon the arresting police officer; larceny of the Martin Oil Company moneys; and perhaps lesser included offenses.

Tanksley's claim is that such evidence of other offenses was inadmissible and prejudicial to him. His counsel did not make objection to this evidence when it was first presented by witness Owen. The court, on its own motion at the conclusion of the direct examination of Owen, then instructed the jury of the limited purpose for which the evidence was received, advising that it was admitted "* * * as bearing upon the question of whether or not the defendant had a plan, scheme or design to produce the results of which the act charged in the information is a part. The defendant cannot be tried or convicted of any offense not charged in the information. * * *" Nor did Tanksley's counsel then object, but proceeded to cross-examine Owen.

Witness Bert's testimony to the same events was similarly admitted into evidence without objection. Likewise, the arresting officer was permitted to testify without objection as to the events at the Olin Hotel relating to Tanksley's arrest. It was not until the conclusion of the People's case that counsel objected to such evidence and moved that all of the events concerning the taking of the money from the filling station and the assault upon the police officer be stricken. This motion was denied. The motion was renewed at the conclusion of the trial and again denied. As a part of the court's charge to the jury, it was again instructed concerning the evidence with reference to other transactions.

We find no error in the admission of the evi-

dence of the other transactions involving criminal conduct on the part of the defendant under the circumstances of this case. It is fundamental that evidence of other separate, distinct and unrelated criminal transactions is inadmissible to show a defendant's guilt for the crime of which he stands charged and is on trial. However, as considered by this Court many times, there are exceptions to this rule. One of the recognized exceptions is that proof of an independent crime is admissible if it is relevant to the proof of the guilt of the defendant of the crime for which he stands charged. *Monge v. People,* 158 Colo. 224, 406 P.2d 674; *Jordan v. People,* 151 Colo. 133, 376 P.2d 699; *Abshier v. People,* 87 Colo. 507, 289 P. 1081. If the evidence is competent, material and relevant to the issue of the defendant's guilt of the crime for which he is on trial, such evidence is not rendered inadmissible merely because it may show that the defendant is guilty of other crimes. Such evidence is not admitted for the purpose of showing the defendant's guilt of other crimes, but rather because it is relevant to show the defendant's guilt of the crime for which he is being tried.

▆ In the instant case, the activities of October 30 showed guilty knowledge on the part of Tanksley; such were entirely inconsistent with his innocence of the robbery of October 27. This evidence was relevant as tending to prove such guilt. *Jordan v. People, supra; Peters v. People,* 151 Colo. 35, 376 P.2d 170; *Beckwith v. United States,* 367 F.2d 458 (10th Cir. 1966). Also, the evidence that the accused used force and threats to resist and evade arrest was relevant to show his guilt. *Ortega v. People,* 162 Colo. 358, 426 P.2d 180; *Commonwealth v. Bonomi,* 335 Mass. 327, 140 N.E. 2d 140; *People v. Proctor,* 169 Cal. App. 2d 269, 337 P.2d 93. Likewise, that the same weapon was used to hold Owen and Bert as hostages on October 30, as was used in the robbery on October 27, bears directly on the issue of guilt. Further, that the threats and intimidation were used against Owen, the sole witness to the robbery, is a convincing circumstance

bearing upon Tanksley's guilt. Simply because the course of conduct carried on by Tanksley and Geiger involved the commission of other criminal acts, did not render such evidence inadmissible if it was otherwise relevant. *Abshier v. People, supra.*

## II.

■ Tanksley next asserts he was unreasonably limited in his cross-examination of Owen concerning a violation of probation arising out of a felony conviction. We find no substance to this claim of error. After properly permitting counsel to attack Owen's credibility by showing evidence of two prior felony convictions, the trial judge limited counsel's further inquiry concerning whether Owens did in fact violate probation. We view this area of inquiry as immaterial to the impeachment issue.

## III.

■■ Tanksley contends it was error for the court to give the instruction on accessory, claiming he was charged as a principal and not as an accessory. It is well-established that an accessory may be charged as a principal. *Harris v. People,* 139 Colo. 9, 335 P.2d 550. Where two or more persons jointly engaged in the commission of a crime, the giving of an accessory instruction is proper. *Cruz v. People,* 147 Colo. 528, 364 P.2d 561. The facts here are similar to those in *Schreiner v. People,* 146 Colo. 19, 360 P.2d 443, where this Court held the accessory instruction to be proper. We find no error in this assignment.

## IV.

■■ Tanksley contends the court erred in failing to instruct the jury on simple robbery as a lesser included offense of the crime of aggravated robbery. Tanksley's counsel did not object to the omission of such an instruction, nor did he request or tender an instruction on simple robbery. He is not now in a position to assert such error. Colo. R. Crim. P. 30; *Rhodus v. People,* 158

Colo. 264, 406 P.2d 679. The evidence was sufficient to prove a prima facie case of aggravated robbery. However, if under these circumstances the defendant does not request an instruction on simple robbery, he cannot be heard to complain. *Phillips v. People,* 170 Colo. 520, 462 P.2d 594; *Hollon v. People,* 170 Colo. 432, 462 P.2d 490.

Tanksley has asserted other alleged errors concerning the sufficiency of the evidence to establish a prima facie case, and several matters of procedure which he contends, when added up, amount to a denial of a fair trial. We find there is ample unrebutted evidence of the commission of an aggravated robbery to support the verdict of the jury. The procedural matters asserted involved the exercise of discretion by the court in conducting the course of the trial. We find no abuse of discretion such as would amount to a denial of a fair trial.

The judgment is affirmed.

MR. JUSTICE HODGES, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.