566 P.2d 1361 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Ricky ORR, Defendant-Appellant.
No. 76-610.
Colorado Court of Appeals, Div. II.
May 5, 1977.
Rehearing Denied May 26, 1977.
Certiorari Denied August 2, 1977.
*1362 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., J. Stephen Phillips, Asst. Atty. Gen., Denver, for plaintiff-appellee.
David A. Sorenson, Denver, for defendant-appellant.
ENOCH, Judge.
Defendant, Ricky Orr, appeals his conviction by a jury of first degree murder and conspiracy to commit robbery and murder. We affirm.
On the evening of January 20, 1972, Linkfeld Glover was shot twice in the head and killed during a robbery of a service station in Denver where he was the attendant. Money and cigarettes worth $105 were taken in the robbery. A passerby, Richard Vigil, observed two young black men, one carrying cigarettes and one carrying a pistol, run from the station. One of these men warned him not to go into the station and to forget what he saw. Vigil fled in fear at *1363 this point and did not report what he had seen until the next day. The victim's nephew discovered the body of his uncle a few minutes after the shooting had occurred. He testified that defendant appeared at the service station just after he had discovered the body and assisted him in finding a coin to call the police. Defendant then left the station, explaining that he was on parole and did not want to get into trouble.
Several days later, Vigil observed a photographic display and identified one Merlin Robinson as one of the men he saw running from the service station. He also picked out pictures of Michael and Ricky Orr as looking like the men he had seen fleeing the station.
In a subsequent lineup, Vigil again identified Robinson as the man with a gun he saw leaving the station. Vigil asked to see Michael and Ricky Orr in a physical lineup, but such a lineup was never conducted. Primarily as a result of Vigil's identification, Robinson was charged on January 28, 1972, with first degree murder. The police questioned Michael and Ricky Orr, but the brothers stated that they had been watching television, that Ricky had gone to the service station to purchase some cigarettes, and that the attendant's nephew had sought his aid in summoning the police when he arrived at the service station.
On July 5, 1972, Michael Orr stated to the police that he was an eyewitness to the murder, but he asserted that parties named Maynes and Roybal were the killers. On August2, 1972, in a chance encounter at the police station, Vigil observed Michael Orr and positively identified him as the person whom he had seen carrying cigarettes from the station and who had told him to stay out of the station. On March 23, 1973, Michael Orr was charged with first degree murder.
On May 29, 1973, jury selection in the Robinson case began, but because of serious doubts about the case, the deputy district attorney decided to investigate further. As a consequence, he interviewed Frances Gonzales, who was Michael Orr's girlfriend and who had previously confirmed Ricky's and Michael's alibi. After receiving a promise from the deputy district attorney that she would never be identified and would not have to testify, she admitted that Ricky and Michael Orr had returned home at about the time of the killing and had excitedly told her that Ricky had killed the attendant. As a result of this information, a mistrial was declared at the prosecution's request in the Robinson trial, and the charges were subsequently dismissed against him.
Michael Orr was arrested in Chicago in October 1974. He confessed that he and Ricky committed the robbery, and he subsequently pled guilty to second degree murder in a plea bargaining arrangement. The district attorney's office was ultimately successful in persuading Frances Gonzales to testify against Ricky Orr, and on June 25, 1975, defendant was charged with the robbery and murder.

I.
Defendant contends that the court should have granted his motion to dismiss the information, which motion was based on the 41-month delay between the occurrence of the crime and the filing of charges against him. This contention is without merit.
This argument is founded on defendant's due process rights under the Fifth and Fourteenth Amendments, rather than under his Sixth Amendment right to a speedy trial which right becomes applicable only after charges have been made or defendant has been arrested. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; People ex rel. Coca v. District Court, 187 Colo. 280, 530 P.2d 958.
In deciding whether due process was denied as a result of delay in bringing charges, several factors are to be considered, including: Whether the delay was purposeful and intended to prejudice the defendant; the kind of evidence and the quantum which is available to prove the prosecution's case; whether defense witnesses have become unavailable by reason of the delay; and whether justice dictates *1364 that the case be dismissed. People ex rel. Coca, supra.
Here, there was no evidence that the delay was purposeful and intended to prejudice the defendant. The evidence against defendant did not become strong until late 1974 and early 1975 when Frances Gonzales and Michael Orr agreed to testify against defendant  an agreement which Michael subsequently refused to honor. The fact that the People may have had sufficient evidence to try defendant at an earlier time did not create a duty to file charges or arrest him immediately. See Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. The prosecutor here properly exercised his judgment as to when to bring charges. Additionally, the type of prosecution evidence and its amount does not indicate a denial of due process.
Also, there was no showing that delay caused witnesses to be unavailable. The only witness who defendant showed that he was unable to subpoena was Merlin Robinson, but evidence presented at a hearing in chambers was not sufficient to show that the inability to find Robinson primarily resulted from the delay in prosecution. And, finally, considerations of justice do not dictate dismissal; in fact, the contrary is true since much of the delay can be attributed to defendant's attempts to conceal his involvement in the crime, including hiding the gun and concocting an alibi story with Michael and Frances.
Under these circumstances, we do not find that the delay in prosecution violated defendant's due process rights.
Defendant claims also that he was prejudiced because if he had been tried between July 1, 1972, and January 1, 1975, the leniency provisions of § 16-11-103, C.R.S.1973, would have been applicable to his case. We find no prejudice.
This unusual situation exists because at the time this offense was committed the statute did not contain a leniency provision. See C.R.S.1963, 40-2-3. Such a provision was enacted and became effective July 1, 1972, see § 16-11-103, C.R.S.1973, Colo.Sess.Laws 1972, ch. 44, sec. 9 at 268; however, a subsequent statutory amendment effective January 1, 1975, removed the leniency provision. See § 16-11-103, C.R.S.1973 (Cum.Supp.1976); Colo. Sess. Laws 1974, ch. 52, sec. 5 at 253. Therefore this provision was not the law at the time of defendant's trial and sentencing.
Generally the law in effect at the time the offense is committed controls, In re P. H. v. State, 504 P.2d 837 (Alaska); however, if a lesser penalty is enacted by the legislature before the final disposition of a defendant's case, the defendant is entitled to the benefits of the legislative change. People v. Thomas, 185 Colo. 395, 525 P.2d 1136. In the case at hand, if prosecution of defendant had commenced or concluded between July 1, 1972, and January 1, 1975, defendant would have been accorded the benefit of the leniency provision then in effect.
We first observe that errors in sentencing do not mandate reversal of a conviction of guilt. See Segura v. District Court, 179 Colo. 20, 498 P.2d 926. However, defendant claims, by virtue of the delay in prosecution, that he should at least get the benefit of the leniency provision.
The reason for making amendatory statutes retroactive is that the legislature is presumed to have determined that the new penalty is adequate and that no purpose would be served by imposing the older, harsher one. State v. Heath, 85 Wash.2d 196, 532 P.2d 621. However, where the amendatory statute has itself been subsequently repealed and replaced by more severe penalties for offenses committed after the repeal, the legislature must be presumed to have determined the penalties to be inadequate. In such a case, as here, defendant should not receive the benefit of the interim legislation, inasmuch as there is no longer in existence a "significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard . . .." Section 18-1-410(1)(f), C.R.S.1973 (Cum.Supp.1976).
*1365 Since the penalty at the time of the defendant's trial and disposition was no more lenient than that in existence at the time of the offense, the former law is applicable, and defendant is not entitled to the interim law.

II.
Defendant claims it was error to exclude testimony about the results of a polygraph test administered to Merlin Robinson after Robinson had been arrested for the murder. Robinson and the district attorney's office had stipulated prior to the test being administered that the results could be used in Robinson's trial. The report on the test concluded that Robinson was not answering questions about the robbery and murder truthfully. In the present case the district attorney objected to admission of these test results, and the court, after hearing foundation testimony from the person who administered the test, ruled that the polygraph results were not reliable and were therefore inadmissible.
Defendant contends that the district attorney and the trial court were both bound by the stipulation made in the Robinson case. We do not agree.
The fact that the trial court found the test to be unreliable was dispositive in this case. Even in cases where parties stipulate to the admissibility of polygraph tests, the court may in its discretion refuse to admit the test results if it finds them unreliable. State v. Forgan, 104 Ariz. 497, 455 P.2d 975; State v. McDavitt, 62 N.J. 36, 297 A.2d 849; State v. Ross, 7 Wash.App. 62, 497 P.2d 1343, 53 A.L.R.3d 997. Here, the court had evidence sufficient to conclude that the reliability of the tests had not been established.

III.
Defendant asserts that it was error to admit Frances Gonzales' hearsay testimony about what Michael Orr told her about the robbery and shooting.
Frances testified as follows: On the night of the robbery she and the two Orr brothers were watching television. Michael and Ricky left their home, which was less than three blocks from the service station, and returned a short time later. Michael stated that Ricky had just killed a man. Ricky then stated that he was going to go back to the service station to establish an excuse in case any of his fingerprints were found there. While Ricky was gone, she and Michael began destroying and concealing the large number of cigarettes Michael had brought back. In the course of this activity, Michael related in great detail the events surrounding the robbery and the murder, including the fact that Ricky had told him before entering the station that he was going to kill the attendant. Ricky then returned and told of encountering the victim's nephew at the station. He then assisted in concealing the remaining cigarettes.
The next day, she drove with the Orrs to an acquaintance's house where they left the murder weapon. As they were returning from delivering the weapon, they were stopped by the police for investigation, their car was searched, and they were then released. After this incident, the three of them decided on an alibi story, which they all told the police in subsequent questioning.
Frances also testified that she heard defendant retell the details of the murder to his friends on two subsequent occasions. Several of the facts related in this testimony were corroborated by other witnesses.
Defendant contends that it was error to admit that portion of Frances' testimony dealing with what Michael had said about defendant's involvement while defendant was not present. This testimony was admitted under the co-conspirator exception to the hearsay rule, which defendant contends was not applicable because, instead of being in furtherance of the conspiracy, the admissions of guilt by Michael in fact thwarted the conspiracy. We find no merit in this argument.
Statements of joint criminal participants are admissible against all, if made in furtherance of and during the course of *1366 that agency. People v. Braly, 187 Colo. 324, 532 P.2d 325; People v. Schlepp, 184 Colo. 28, 518 P.2d 824.
While the statements here were made after the actual robbery and homicide, the court found them to have been made during a conspiracy to conceal these crimes, and found prima facie independent evidence of the conspiracy. This agreement to conceal made the co-conspirator exception to the hearsay rule applicable. Reed v. People, 156 Colo. 450, 402 P.2d 68; Smaldone v. People, 103 Colo. 498, 88 P.2d 103; People v. Anders, Colo.App., 559 P.2d 239. Furthermore, relating these statements to Frances did not tend to thwart the conspiracy, inasmuch as they were made in the course of enlisting her assistance in concealing evidence.

IV.
Defendant also claims several errors arising from testimony at trial which allegedly linked him to criminal activity unrelated to that for which he was being tried. We find no error.
Richard Vigil testified that he first realized that it was defendant, rather than Robinson, who was the gunman he saw running out of the station when he observed defendant in a holding cell in the Denver City and County Building. Vigil had just been sentenced to jail for failure to pay parking tickets. Vigil further stated that defendant appeared to recognize him, and as they sat together on the bus which returned them to jail, defendant asked if they had not met before.
Evidence tending to establish identity of a defendant is admissible even if it incidentally indicates commission of another offense. Leyba v. People, 174 Colo. 1, 481 P.2d 417. Here, as in Leyba, testimony as to defendant's incarceration was limited to only those circumstances which were directly related to Vigil's identification of defendant. Therefore there was no error in admitting this testimony.
Testimony also established that defendant was a passenger in a car with one Steve Martinez when Martinez shot at and wounded two people. This incident was relevant because, during the course of the investigation of that case, defendant's mother assisted police in recovering the weapon which had been used in that assault and which had been in her home. Subsequent tests revealed this to be the murder weapon.
The implication that this showed defendant participated in other criminal activity is tenuous at best. Assuming, however, that the evidence did link defendant to other criminal activity, it was still admissible in this case. Generally, evidence which tends to show that the accused has committed a crime wholly independent of the offense for which he is on trial is inadmissible; however, an exception allowing admission exists when proof of an independent crime is relevant to prove directly the guilt of the defendant of the crime for which he stands charged. Tanksley v. People, 171 Colo. 77, 464 P.2d 862; Wooley v. People, 148 Colo. 392, 367 P.2d 903. Here, the involvement of defendant in the Martinez case was directly relevant in proving defendant had knowledge of and access to the murder weapon, and in explaining how the police eventually recovered the weapon. The testimony was therefore properly admitted, even if it implicated defendant in other criminal activity.
Defendant contends that even if the evidence of other criminal activity was admissible, the court, sua sponte, should have given the limiting instruction required by Stull v. People, 140 Colo. 278, 344 P.2d 455. However, since both incidents complained of by defendant were relevant in directly proving events related to the murder and robbery, and were not merely evidence of similar transactions introduced to show plan, scheme, or design, there was no necessity for the court to give a Stull instruction. People v. Anderson, 184 Colo. 32, 518 P.2d 828; Wooley v. People, supra.
Judgment affirmed.
PIERCE and RULAND, JJ., concur.