The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 3, 2018

**2018COA61**

**No. 15CA2082, People v. Cali — Criminal Procedure — Postconviction Remedies — Collateral Attack Upon a Criminal Judgment**

A division of the court of appeals considers whether a defendant is entitled to the benefit of a statutory amendment that took effect before his conviction was final on appeal even though the defendant requested the benefit of the amendment in a Crim. P. 35(c) postconviction motion after his conviction became final on appeal. The division concludes that under *People v. Boyd*, 2017 CO 2, the statutory amendment that took effect before the defendant's conviction was final on appeal deprived the State of the authority to prosecute the defendant for the offense of which he was convicted. Although the defendant did not raise the State's loss of authority to prosecute him before his conviction became final on appeal, the

division concludes that the defendant could collaterally attack his conviction on this ground under Crim. P. 35(c)(2)(VI) after his conviction became final on appeal. The defendant is therefore entitled to the benefit of the statutory amendment.

COLORADO COURT OF APPEALS     **2018COA61**

---

Court of Appeals No. 15CA2082
El Paso County District Court No. 11CR3659
Honorable Barney Iuppa, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Osmundo Rivera Cali,

Defendant-Appellant.

---

ORDER REVERSED, JUDGMENT VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE ASHBY
Terry, J., concurs
Nieto*, J., dissents

Announced May 3, 2018

---

Cynthia H. Coffman, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Osmundo Rivera Cali, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Defendant, Osmundo Rivera Cali, appeals the postconviction court's order denying his Crim. P. 35(c) motion.  We apply *People v. Boyd*, 2017 CO 2, to conclude that a defendant whose conviction has been affirmed on direct appeal may nevertheless collaterally attack that conviction in a postconviction motion on the ground that the State lost the authority to prosecute his conviction during the pendency of his direct appeal.  We therefore reverse the postconviction court's order, vacate Cali's conviction, and remand the case with directions.

## I. Background

¶ 2     In 2012, Cali was convicted of theft and theft by receiving, both class 4 felonies, as well as two habitual criminal counts.  The trial court sentenced him to eighteen years in the custody of the Department of Corrections.

¶ 3     In August 2012, Cali directly appealed his convictions, arguing, among other things, that he could not be convicted of theft and theft by receiving because both offenses involved the same stolen property.  A division of this court agreed and, in October 2014, vacated his theft conviction while affirming his theft by

receiving conviction.  *See People v. Cali*, (Colo. App. No. 12CA1730, Oct. 2, 2014) (not published pursuant to C.A.R. 35(f)).

¶ 4        Meanwhile, in June 2013, after Cali had filed his notice of appeal in the direct appeal and while the appeal was still pending, the legislature reclassified theft by receiving, as committed by Cali, to a class 6 felony.  Ch. 373, sec. 3, § 18-4-410, 2013 Colo. Sess. Laws 2197-98 (repealing theft by receiving statute); Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2195-96 (incorporating substantive offense of theft by receiving into offense of theft).  Cali did not request the benefit of the amended theft by receiving statute in his direct appeal.  Instead, after his direct appeal became final, Cali timely filed a pro se Crim. P. 35(c) motion asserting, as relevant here, that he was entitled to the benefit of the changed statute.

¶ 5        The postconviction court denied Cali's motion without a hearing.  In doing so, it ruled that Cali was not entitled to the benefit of the changed statute because "the law changed after his sentence was imposed, his sentence has been affirmed on appeal and because the 'new' Theft [sic] statute was intended to have prospective, not retroactive, application."

2

¶ 6     Cali now appeals the postconviction court's ruling.[1]  He argues that the trial court erred by analyzing his postconviction claim as a request for retroactive application of the statutory amendment. Instead, he argues that because the amendment took effect while his direct appeal was still pending and before his conviction became final, he is entitled to the benefit of the amendment.  We agree.

## II. Cali Was Entitled to the Benefit of the Changed Statute

¶ 7     As the postconviction court acknowledged, whether Cali is entitled to the benefit of the changed statute is a purely legal question.  We therefore review the postconviction court's ruling de novo.  *See People v. Valdez*, 178 P.3d 1269, 1278 (Colo. App. 2007).

¶ 8     The prosecution argues that "the long-established rule in Colorado is that the law in effect at the time the offense is committed is the law that controls both the prosecution and punishment of the defendant."  It cites *People v. Orr*, 39 Colo. App. 289, 566 P.2d 1361 (1977), for this rule.  But this argument misconstrues the relevant rule and the holding in *Orr*.  Contrary to

---

[1] Cali's other claims in his pro se Crim. P. 35(c) motion are unrelated to the statutory amendment and are not before us in this appeal.

the prosecution's argument, the rule in Colorado, as stated by the division in *Orr*, is that "[g]enerally the law in effect at the time the offense is committed controls; however, if a lesser penalty is enacted by the legislature before the final disposition of a defendant's case, the defendant is entitled to the benefits of the legislative change." *Id.* at 293, 566 P.2d at 1364 (citation omitted).

¶ 9 This rule originated in *People v. Thomas*, 185 Colo. 395, 398, 525 P.2d 1136, 1138 (1974), wherein the supreme court held that a criminal defendant was entitled to the benefit of a statutory change that took effect after he committed the offense but before his conviction became final. In doing so, the court said, "[t]he view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law." *Id.*

¶ 10 For decades, "both the supreme court and the court of appeals have consistently applied the *Thomas* rule to give convicted criminal defendants the 'benefit of amendatory legislation which became effective at any time before the conviction became final on appeal.'" *People v. Boyd*, 2015 COA 109, ¶ 21 (quoting *People v. Griswold*, 190 Colo. 136, 137, 543 P.2d 1251, 1252 (1975)), *aff'd*, 2017 CO 2.

While this rule itself is clear, what is not clear is whether its application implicates retroactivity principles. In other words, it is not clear whether giving a defendant the benefit of a changed statute before his or her conviction becomes final on appeal is retroactive application of the new statute or merely application of the new statute to a still-pending case. The supreme court's recent opinion in *Boyd* suggests the latter.

¶ 11    Boyd was convicted of possession of a small amount of marijuana and sentenced. *Id.* at ¶ 2. But before that conviction and sentence became final on appeal, an amendment to the state constitution (Amendment 64) took effect that made it legal to possess the amount of marijuana that Boyd had been convicted of possessing. *Id.* at ¶ 4. A division of this court held that under *Thomas* and its progeny, Amendment 64 applied retroactively to decriminalize Boyd's conduct because the amendment took effect while Boyd's direct appeal was still pending. *Id.* at ¶¶ 14-25. Both the majority and the partial dissent in that division specifically and thoroughly addressed *Thomas* and its progeny, along with several statutes implicating retroactivity principles. *Id.* at ¶¶ 14-35; *id.* at ¶¶ 55-86 (Bernard, J., concurring in part and dissenting in part).

¶ 12    After granting certiorari, the supreme court took a different approach. The supreme court majority affirmed that Boyd was entitled to the benefit of Amendment 64. *Boyd*, 2017 CO 2, ¶ 10. But, as the dissent pointed out, the majority did so without addressing retroactivity principles and without even using the term "retroactive" in its substantive analysis. *Id.* at ¶ 11 (Eid, J., dissenting) ("The majority carefully avoids using the term 'retroactive' (except when it cannot, as in the certiorari question upon which this court granted).") (citation omitted). Instead, the majority held that as of Amendment 64's effective date, the State lost the authority to prosecute Boyd's conviction. *Id.* at ¶ 9 (majority opinion). Because Amendment 64 deprived the State of its authority to prosecute Boyd before her conviction became final on appeal, the majority reasoned that Boyd was entitled to reversal of that conviction. *Id.* at ¶ 10.

¶ 13    We understand the supreme court's holding in *Boyd* to be that a convicted defendant is entitled to the benefit of changes to the State's prosecutorial authority if those changes take effect before the conviction and sentence are final on appeal — irrespective of retroactivity principles. Although *Boyd* addressed the loss of the

6

State's prosecutorial authority by constitutional amendment, nothing in the supreme court's analysis suggests that the loss of the State's prosecutorial authority by statutory amendment would have any different effect. And in our view, there is no legally significant difference; the State either has the authority to prosecute a defendant for a specific offense based on his or her conduct and impose the specific penalties based on the legislative classification for that offense or it does not.

¶ 14     Here, the circumstances of Cali's case are essentially the same as those in *Boyd*. At the time of his conviction and sentence, the theft by receiving statute provided that Cali's offense was a class 4 felony. But before his conviction and sentence became final on appeal, that statute was repealed and replaced with a new statute that classified his offense as a class 6 felony. In other words, before Cali's conviction became final, the State lost the authority to prosecute Cali for committing the class 4 felony of theft by receiving. *Id.*

¶ 15     We recognize that the elements of the class 4 felony and the class 6 felony are identical. But that does not matter. The Supreme Court, in *United States v. Chambers*, 291 U.S. 217 (1934),

7

a case upon which our supreme court relied in *Boyd*, explained that the State's authority to prosecute a defendant "necessarily depend[s] upon the continued life of the statute that the prosecution seeks to apply." *Id.* at 223. The statute classifying theft by receiving as a class 4 felony died when the amendment took effect. The State therefore lost the authority to apply that statute to Cali. That a different statute classifying theft by receiving as a class 6 felony could then be applied to Cali does not change the fact that the State lost the authority to enforce the statute under which Cali had been convicted.

¶ 16 Thus, under *Boyd* and *Chambers*, Cali could have successfully requested reversal of his class 4 felony conviction had he done so during his direct appeal. However, Cali failed to do so. Instead, he requested this relief in a postconviction motion after his conviction became final on appeal. *Boyd* did not address this specific circumstance. And the prosecution argues that this procedural difference bars Cali from receiving the benefit of the new statute. We disagree.

¶ 17 The prosecution seeks to construe Cali's postconviction claim as one "essentially seeking relief under section 18-1-410(1)(f)(I),"

C.R.S. 2017. This provision authorizes "retroactive application of [a] changed legal standard" in the interests of justice. § 18-1-410(1)(f)(I). Relief under this provision is, however, unavailable if a judgment of conviction has been affirmed on appeal. *See* § 18-1-410(1)(f)(II). And Crim. P. 35(c)(1) provides for the same relief under the same conditions and with the same limitations.

¶ 18 But, as the supreme court made clear in *Boyd*, it is not retroactive application of the amendment that entitles Cali to the benefit of the new statute. Instead, under *Boyd*, the amended statute applies to Cali because the State lost the authority to apply the old statute to him when it was repealed during the pendency of his direct appeal and before his conviction was final. Because Cali's claim was not based on retroactive application of the new statute, it was not cognizable as a claim for relief under section 18-1-410(1)(f)(I) or Crim. P. 35(c)(1).

¶ 19 Cali's postconviction claim sought to reverse his conviction of the class 4 felony and instead stand convicted of the class 6 felony. It was therefore cognizable as a collateral attack on the class 4 felony conviction under section 18-1-410(1)(g) and Crim. P. 35(c)(2)(VI). Each of those provisions authorizes a defendant to file

9

a postconviction motion based on "[a]ny grounds otherwise properly the basis for collateral attack upon a criminal judgment" after that judgment has been affirmed on appeal. And although Cali could have raised this issue in his direct appeal, because the statute changed after he initiated that appeal, the claim was not barred. *See* Crim. P. 35(c)(3)(VII)(a) (providing that a court shall deny any claim that could have been raised in prior appeal except "[a]ny claim based on events that occurred after initiation of the defendant's prior appeal").

¶ 20      Finally, the dissent argues that allowing Cali to request application of the changed statute to his case after his conviction was final on appeal would violate longstanding principles of finality. We respectfully point out that Crim. P. 35(c)(2)(VI) specifically authorizes defendants to collaterally attack their convictions on "[a]ny grounds otherwise properly the basis for collateral attack" after their convictions are final on appeal. And we are unaware of any authority stating that the State's loss of authority to prosecute a defendant for the offense he was convicted of is an improper ground on which to collaterally attack a conviction.

10

¶ 21    We therefore conclude that Cali has asserted a timely postconviction claim under section 18-1-410(1)(g) and Crim. P. 35(c)(2)(VI) that entitles him to reversal of his conviction of class 4 felony theft by receiving.  However, because a jury found that he was guilty of theft by receiving and because that offense is a class 6 felony under the new statute, the trial court must convict him of the class 6 felony and sentence him accordingly.

III. Additional Authority That Does Not Affect Our Conclusion

¶ 22    Because they have impacted the development of case law in this area, we make observations about two additional sources of authority relevant to our conclusion, although the parties did not raise either.  First, we are aware that the supreme court, in *People v. Herrera*, 183 Colo. 155, 516 P.2d 626 (1973), addressed whether reducing a defendant's sentence under a provision of section 18-1-410 violated the separation of powers doctrine by empowering courts to grant commutations.  Then, as now, the Colorado Constitution provided that only the governor has the power to grant "reprieves, commutations and pardons after conviction."  Colo. Const. art. IV, § 7.

¶ 23 The *Herrera* defendants[2] sought postconviction review of their sentences under a statute that provided for postconviction review if "there has been a significant change in the law, applied to [defendant's] conviction or sentence, [a]llowing in the interest of justice retroactive application of the changed legal standard." *Herrera*, 183 Colo. at 159, 516 P.2d at 627 (quoting § 40-1-510(1)(f), C.R.S. 1971 & *amended by* Ch. 152, sec. 2, § 40-1-510, 1973 Colo. Sess. Laws 533). The court held that the defendants' requests for judicial review of their sentences under this statute were effectively requests for judicial commutations. *Id.* at 161-62, 516 P.2d at 628. Because Colorado's constitution gives the commutation power exclusively to the governor, the supreme court denied the defendants' requests for review. *Id.* at 162, 516 P.2d at 629.

¶ 24 We perceive no separation of powers violation resulting from our conclusion in Cali's case. Unlike the *Herrera* defendants, Cali is not requesting a judicial commutation or reduction of his sentence. The *Herrera* court defined the power of commutation as "the power to reduce punishment from a greater to a lesser

---

[2] Eight cases were consolidated for appeal.

12

sentence." *Id.* at 161, 516 P.2d at 628. Cali has not asked for a reduction of his sentence; he has sought reversal of his class 4 felony conviction. If Cali's sentence is reduced, it will be because he will stand convicted of a different class of felony, not because his sentence was commuted. As discussed above, Cali's claim is a collateral attack on his class 4 felony conviction, not a request that we commute his sentence and leave his conviction intact.

¶ 25    Second, we address section 2-4-303, C.R.S. 2017. That provision states that

> [t]he repeal, revision, amendment, or consolidation of any statute or part of a statute . . . shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty, . . . either civil or criminal, which shall have been incurred under such statute, unless the repealing, revising, amending, or consolidating act so expressly provides.

¶ 26    The statutory language appears to contradict the *Thomas* rule and our holding that Cali is entitled to the benefit of the new statute. But the supreme court has explained that the postconviction review remedies of section 18-1-410 effectively trump section 2-4-303 in criminal cases. *See Noe v. Dolan*, 197 Colo. 32, 36 n.3, 589 P.2d 483, 486 n.3 (1979) ("Where a criminal

penalty is at issue, this court has consistently adhered to the principle enunciated in [*Thomas*] . . . .  This result is dictated by the legislative intent evidenced by the postconviction review remedy authorized by section 18-1-410(1)(f) . . . .") (addressing retroactive application of a changed legal standard).

¶ 27     More importantly, the supreme court concluded in *Boyd* that when the State loses the authority to prosecute a defendant's conviction before that conviction is final on appeal, the defendant is entitled to reversal of that conviction.  As discussed above, we see no reason why it would be legally significant that the State's authority is removed by statutory rather than constitutional amendment.  Applying section 2-4-303 to uphold convictions that the State has lost the authority to prosecute before they are final on appeal would therefore violate the holding in *Boyd*.

¶ 28     Finally, we note that the supreme court has granted certiorari in two cases in which the respective defendants committed theft before the new theft statute took effect, but were found guilty, convicted, and sentenced after the new statute took effect.  *See People v. Stellabotte*, 2016 COA 106 (*cert. granted* Feb. 6, 2017); *People v. Patton*, (Colo. App. No. 14CA2359, Aug. 11, 2016) (not

published pursuant to C.A.R. 35(e)) (*cert. granted* Feb. 6, 2017). In both cases, the opinions of this court, announced prior to the supreme court's opinion in *Boyd*, analyzed whether the respective defendants were entitled to the benefit of the changed statute under principles of retroactivity. *See Stellabotte*, ¶¶ 44-48; *Patton*, No. 14CA2359, slip op. at 11-12. We expect and hope that the supreme court will consider *Boyd*'s applicability to those cases.

## IV. Conclusion

¶ 29    The postconviction court's order denying Cali's claim that he was entitled to the benefit of the changed theft statute is reversed. We also vacate Cali's conviction of the class 4 felony and remand the case to the postconviction court with directions to enter a judgment of conviction of the class 6 felony and sentence Cali accordingly.

JUDGE TERRY concurs.

JUDGE NIETO dissents.

JUDGE NIETO, dissenting.

¶ 30    In a well-written opinion, the majority has determined that the supreme court in *People v. Boyd*, 2017 CO 2, has abandoned the longstanding rules on the retroactive application of amendatory statutes.  I do not agree with the majority's reading of *Boyd* and do not agree that it has application to the facts of this case.  Instead, I conclude that because Cali's conviction was final before he filed his Crim. P. 35(c) motion, the trial court properly denied the motion.  Therefore, I respectfully dissent.

## I. *Boyd*

¶ 31    *Boyd* is distinguishable for several reasons.  First, and importantly, Boyd's conviction was on direct appeal and was not final, while here, Cali's conviction was final before he filed his Crim. P. 35(c) motion that is the subject of this appeal.  The majority finds the finality of Cali's conviction to be of no consequence in its application of *Boyd* to this appeal.  This conclusion, in my view, implies that the supreme court in *Boyd* abandoned, or at least disregarded, its decision in *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974), and its progeny, which have consistently applied amendatory legislation only to convictions that were not final.  *See*

16

*People v. Boyd,* 2015 COA 109, ¶ 21 ("[B]oth the supreme court and the court of appeals have consistently applied the *Thomas* rule to give" the benefit of amendatory legislation to defendants where convictions were not final.) (collecting cases), *aff'd,* 2017 CO 2.  In another case, our supreme court noted that "[w]e have also recognized that the concept of finality is an important landmark on the Colorado criminal justice landscape.  And we have noted its enhanced significance in the context of Crim. P. 35(c) proceedings." *Edwards v. People,* 129 P.3d 977, 982 (Colo. 2006) (citation omitted).  It seems to me that the supreme court would not have made this significant change to an important and longstanding rule only by implication in an opinion that does not even mention *Thomas.*

¶ 32     Second, in *Boyd,* the supreme court very clearly said what it was deciding.  "This case presents an opportunity to resolve whether Amendment 64 deprived the State of the power to continue to prosecute cases where there was a *nonfinal conviction* . . . with a *pending right to appeal* when Amendment 64 became effective." *Boyd,* 2017 CO 2, ¶ 5 (emphasis added).  The court also made clear what it was not deciding.  "We do not find it necessary to address

17

the effect of Amendment 64 on *final convictions.*"  *Id.* at ¶ 2 n.1 (emphasis added).  Therefore, I would not rely on *Boyd* in a postconviction proceeding as authority to apply an amendatory statute to a conviction that had become final following direct appeal.

¶ 33    Third, I would note the fundamental difference between the constitutional amendment in *Boyd* and the statutory amendment here.  The constitution is the root source of all the State's authority to act.  Once Amendment 64 was effective, the State no longer had authority to prosecute Boyd for the offenses alleged in that case.  The amendment provided that "the following acts are not unlawful and shall not be an offense under Colorado law . . . ."  Colo. Const. art. XVIII, § 16(3).  Thus, the underpinning necessary for the State to take criminal action against Boyd was taken away by Amendment 64 as of its effective date.  The statutory amendment here left intact the authority of the State to prosecute theft crimes, and it only changed the penalties that can be imposed for offenses that occur after the effective date of the amendment.  *See* § 2-4-202, C.R.S. 2017 ("A statute is presumed to be prospective in its operation.").  This fundamental difference in the effect of

18

Amendment 64 and the statutory amendment here makes *Boyd* inapplicable in this case. The amendatory statute here did not purport to deprive the State of its authority to prosecute a defendant for conduct defined as criminal by the General Assembly. The majority has equated a statute that amended the penalty prescribed for certain conduct to a constitutional amendment that specifically removed the State's authority to prosecute certain conduct. It interprets *Boyd* to imply that the statutory amendment that adjusted the penalty for a crime constituted a "loss of the State's prosecutorial authority." *Supra* ¶ __. I do not agree with that proposition.

¶ 34    Accordingly, I would decide this appeal without attempting to apply the holding in *Boyd* to the facts of this case.

## II. Finality

¶ 35    The majority has set out the facts and pertinent history of this case. I will not repeat them here, except to emphasize that Cali's conviction was affirmed on appeal, certiorari was denied, and the mandate issued in May 2015 — making his conviction final before he filed the postconviction motion in September 2015.

19

¶ 36    Cali's Crim. P. 35(c) motion claimed, among other things not raised here, that his sentence was improper under the June 2013 legislative amendment.  The trial court rejected this claim, finding that the amendment occurred after his sentencing, his sentence had been affirmed on appeal, and the amendment was prospective.

¶ 37    In this appeal Cali pursues only the claim that the 2013 amendment applies in his case.  If the amendment applies, the conviction would be a class 6 felony, which would yield a lower habitual offender sentence.  I perceive no error and would affirm the trial court's order.

¶ 38    Cali's request to apply a "substantive change in the law" would fall within the provision in Crim. P. 35(c) permitting a motion based on "a significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application."  But this rule only applies if "judgment on that conviction has not then been affirmed upon appeal" prior to filing the motion.  Crim. P. 35(c)(1); *see also* § 18-1-410(1)(f)(I), (II), C.R.S. 2017 (containing the same limitation).  The text of both the statute and the rule prohibit the relief Cali requested after his

20

conviction became final. In *People v. White*, a division of this court

agreed with this plain meaning of Crim. P. 35(c):

> While Crim. P. 35(c)(1) provides a remedy to an
> offender whose conviction or sentence is
> affected by a change in the law during the
> pendency of a direct appeal of such conviction
> or sentence, it does not provide a remedy to an
> offender claiming the benefit of changes in the
> law that occur during the pendency of other
> post-conviction proceedings.

804 P.2d 247, 250 (Colo. App. 1990).

¶ 39     Cali contends that his conviction was not final, and, therefore,

he was entitled to be sentenced under the amended statute. I do

not agree.

¶ 40     Convictions are final when direct appeal has been exhausted

and a petition for certiorari has been forfeited or denied. *Edwards*,

129 P.3d at 983; *People v. Hampton*, 876 P.2d 1236, 1239 (Colo.

1994). Significantly, in the binding precedent, *People v. Arellano*,

185 Colo. 280, 524 P.2d 305 (1974), the relevant statute was

amended while the appeal was pending, but the issue was not

raised until after finality had attached to the conviction. Our

supreme court held that, even there, relief could not be granted

after the conviction was final. The facts in the *Arellano* case are on

all fours with the present case: the relevant statute was amended while Cali's appeal was pending, but Cali filed his motion after the mandate issued in his direct appeal. His conviction was final, and he is not entitled to the relief he requested.

¶ 41    Finality is not just a technicality; it is a hard boundary. The following cases demonstrate how firm the boundary is. In *People v. Herrera*, 183 Colo. 155, 516 P.2d 626 (1973), when the General Assembly explicitly authorized courts to review sentences after a conviction became final, the supreme court invalidated the statute as a breach of the separation of powers doctrine. In *People v. Carter*, 186 Colo. 391, 527 P.2d 875 (1974), the supreme court held that judicial review of sentences before finality is a proper judicial function. In *People v. Arellano*, the supreme court held that after the conviction was final, relief could not be granted on a motion filed after finality. 185 Colo. at 283, 524 P.2d at 306. Then in *People v. Thomas*, the defendant filed a motion for postconviction review of his sentence while his direct appeal was pending. The motion was based on a statute that amended the penalty for his offense. The supreme court held that the motion could be

entertained because it was filed before his conviction was final. 185 Colo. at 397, 525 P.2d at 1137.

¶ 42 In each of these cases the decision pivoted on when the conviction became final.

¶ 43 All these cases drew the line at finality. I would continue to do so and would affirm the trial court's denial of Cali's Crim. P. 35(c) motion because his conviction was final before he filed his motion, and therefore the rule and section 18-1-410(1)(f)(I), (II) deny him the relief he requested.